UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>            Plaintiff(s),<br><br>    v.<br><br>ERNEST C. ALDRIDGE, et al.,<br><br>            Defendant(s). | Case No. 2:15-CV-2366 JCM (GWF)<br><br>ORDER |

Presently before the court are plaintiff Federal National Mortgage Association's ("plaintiff") ("Fannie Mae") *ex parte* motions for temporary restraining order, (doc. # 17), and preliminary injunction (doc. # 18).

**I.    Background**

Plaintiff owns the following nine real properties: 230 Flint Street, Fernley, Nevada 89408 (assessor's parcel No.: 020-323-06) ("Flint property"); 330 Garden Lane, Fernley Nevada 89408 (assessor's parcel No.: 020-729-15) ("Garden property"); 5373 Homeria Street, Las Vegas, Nevada 89113 (assessor's parcel No.: 163-28-720-01) ("Homeria property"); 7240 Mountain Moss Drive, Las Vegas, Nevada 89147 (assessor's parcel No.: 163-15-710-093) ("Mountain Moss property"); 7116 Cornflower Drive, Las Vegas, Nevada 89128(assessor's parcel No.: 138-27-515-029) ("Cornflower property"); 5320 Hombly Avenue, Las Vegas, Nevada 89146 (assessor's parcel No.: 163-01-511-026) ("Hombly property"); 2523 Palma Vista Avenue, Las Vegas, Nevada 89121 (assessor's parcel No.: 162-12-310-045) ("Palma Vista property"); 4912 Canadian Drive, Las Vegas, Nevada 89130 (assessor's parcel No.: 125-36-814-012) ("Canadian property"); and 5654

**James C. Mahan**
**U.S. District Judge**

Thunder Spirit Street, Las Vegas, Nevada 89148 (assessor's parcel No.: 163-30-816-006) ("Thunder Spirit property") (collectively, "subject properties"). (Doc. #17)

Plaintiff alleges that over the course of several months, the defendants have engaged in a conspiracy to defraud plaintiff of its interest in these nine Nevada properties. Defendants, without any legal right or authorization by plaintiff, prepared, executed and recorded deeds purporting to transfer title from plaintiff to the defendants.

It appears that the defendants executed all nine schemes using substantially similar patterns. Fannie Mae acquired its ownership interest in a subject property pursuant to a Trustee's Deed Upon Sale recorded in the official records for the appropriate county. Then, defendant Ernest C. Aldridge would record and subsequently re-record a quitclaim deed. For each property, plaintiff Fannie Mae would purportedly deed the property to defendant Aldridge for the amount of $10.00. Defendant Clarence Moses Willis would then sign the quitclaim deed as purported authorized agent for Fannie Mae. The quitclaim deeds would list plaintiff's mailing address as 4912 Canadian Drive, Las Vegas, Nevada 89130.

Plaintiff asserts that Clarence Moses Willis is not, nor as ever been, an employee of plaintiff Fannie Mae and is not an agent or authorized representative of plaintiff in any capacity. Furthermore, 4912 Canadian Drive, Las Vegas, Nevada 89130 is not plaintiff's mailing address. Plaintiff also claims that it never authorized defendant Aldridge to prepare, execute or record any quitclaim deed, nor did plaintiff authorize defendant Willis to prepare, execute or record any quitclaim deed on its behalf.

Four of the properties, as detailed fully in plaintiff's motion for TRO, have had a Grant, Bargain, Sale Deed recorded in the records of Clark or Lyons county. (Doc. #17). "Pastor Ernest C. Aldridge and his successor, a corporate sole," has purportedly deeded each of these properties to one of defendants Geri L. McKinnion, Creative Solutions 4 U, or Clarence Moses Willis for $10.00.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order when the moving party provides specific facts showing that immediate and irreparable injury, loss,

**James C. Mahan**
**U.S. District Judge**

or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. Fed. R. Civ. P. 65.

"The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, no. 2:12-cv-1853-JCM-VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012) (citing *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)). "Thus, in seeking a temporary restraining order, the movant must demonstrate that the denial of relief will expose him to some significant risk of irreparable injury." *Id.* (quoting *Associated Gen. Contractors of Cal. v. Coal. of Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991)).

The Supreme Court has stated that courts must consider the following elements in determining whether to issue a temporary restraining order and preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element.

Additionally, post-*Winter*, the Ninth Circuit has maintained its serious question and sliding scale test. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

**III.   Discussion**

As a threshold matter, plaintiff filed its motion for temporary restraining order *ex parte* on the grounds that there is significant risk that "if notified, [d]efendants may rush to record additional fraudulent deeds against Fannie Mae owned properties or the [s]ubject [p]roperties." (Doc. #17, Aff. Nielson) Plaintiff does not know if they have valid addresses for the defendants. Thus,

**James C. Mahan**
**U.S. District Judge**

- 3 -

defendants have not yet been served with the complaint and plaintiff has thus been unable to provide written notice to of its intent to seek a temporary restraining order. Plaintiff does not have telephone numbers for the defendants and cannot provide oral notice either.

As defendant's conduct is ongoing, the court finds that the specific facts clearly show that immediate and irreparable injury, loss, or damage will result to plaintiff before the adverse party can be heard in opposition, and it is therefore appropriate to issue this TRO without notice. Fed. R. Civ. P 65(b)(1)(A).

### A. Likelihood of success on the merits

Plaintiff argues that it is likely to succeed on the merits of its claims for declaratory relief, quiet title, fraud, conspiracy to defraud, slander of title, unjust enrichment, fraudulent conveyance, unauthorized impersonation, and trespass. (Doc. #17). However, for the purposes of this order, the court will focus its likelihood of success on the merits analysis on only those claims central and immediately relevant to the injunction preventing the conveyance against the real properties in question. Because the court finds that plaintiff is likely to succeed on its claims for declaratory relief, quiet title, fraud, and conspiracy to defraud, the court need not address whether plaintiff is likely to succeed on the merits of its remaining claims.

#### a. Declaratory Relief

Plaintiff argues that it is likely to succeed on its cause of action for declaratory relief because it has superior claim to the title of the subject properties.

Declaratory relief is available when: (1) a justiciable controversy exists; (2) the controversy is between parties with adverse interests; (3) the party seeking declaratory relief has a legally protectable interest; and (4) the issue involved in the controversy is ripe for judicial determination. *Doe v. Bryan,* 102 Nev. 523, 525, 728 P.2d 443, 444 (1986) (citing *Kress v. Corey,* 65 Nev. l, 26, 189 P.2d 352, 364 (1948)); *see also Douglas v. Don King Productions, Inc.,* 736 F.Supp 223, 225 (1990). Declaratory relief is also appropriate to clarify parties' rights to property where allegations of fraudulent conveyances exist. *See, e.g.*, *Federal Home Loan Mortg. Corp. v. Gonzalez,* 2015WL 2358444, *3 (E.D. Cal. 2015) (granting declaratory relief where defendants executed and

**James C. Mahan**
**U.S. District Judge**

recorded, without authority, grant deeds conveying away Freddie Mac's ownership interest in the subject property).

Based on the documents provided, it appears that plaintiff obtained legal title to all of the subject properties via legitimate trustee's deeds upon sale. (Doc. #17, Exhs. 1, 5, 8, 11, 13, 16, 18, 20, 22). Following the establishment of plaintiff's interests, defendant Aldridge, without authorization, prepared, executed and recorded unauthorized quitclaim deeds. These unauthorized deeds purported to convey title in the subject properties to Defendant Aldridge. In furtherance of this scheme, Defendant Willis, executed the quitclaim deeds purportedly on behalf of plaintiff, stating he was an "authorized agent." Plaintiff claims that defendant Willis is not, and has never been, an employee or authorized agent of Fannie Mae.

The court finds that plaintiff has demonstrated a likelihood of success on the merits. Given their lack of authorization to prepare, execute or record quitclaim deeds against the properties, defendants actions appear to intentionally cloud title and allow them to profit by collecting rental proceeds for properties belong to plaintiff. (Doc. #17). However, as these deeds are fraudulent and unauthorized, they cannot convey title. *See Balfour v. Hopkins*, 93 F. 564, 569 (9th Cir. 1899); *United States v. Payette Lumber & Mfg. Co.*, 198 F. 881, 895 (D. Idaho 1912).

      b.  Quiet Title

Plaintiff next claims it is entitled to an order quieting title in Fannie Mae's names because the quitclaim deeds and GBS Deeds are fraudulent and unauthorized. Pursuant to N.R.S. § 40.010, a claim for quiet title "may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *See also Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1 103, 1107 (2013) (finding that a quiet title claim is set forth in N.R.S. 40.010).

The court finds plaintiff is likely to succeed on the merits of this issue. In a quiet title action, the burden of proof rests with the plaintiff to prove good title. *Brehant v. Preferred Equities Corp.*, 112 Nev. 663, 918 P.2d 314, 31 8 (1996). Plaintiff obtained legal title to the properties via several trustee's deeds upon sale. (Doc. #17, Exhs. 1, 5, 8, 11, 13, 16, 18, 20, 22). Plaintiff claims to have never agreed to convey the subject properties to the defendants.

      *c. Fraud and Conspiracy to Defraud*

Plaintiff claims that defendants knowingly prepared, executed and recorded fraudulent deeds. In Nevada, a cause of action for fraud requires a showing of false representation of a material fact, known to be false, with the intent to induce reliance. *Lubbe v. Barba.* 91 Nev. 596, 599, 540 P.2d 115, 117 (1975).

A civil cause of action for conspiracy to defraud requires: 1) a conspiracy agreement. *i.e.,* a combination of two or more persons who, by some concerted action intended to accomplish an unlawful objective for the purpose of harming another; 2) an overt act of fraud in furtherance of the conspiracy; and 3) resulting damages to the plaintiff. *Jordan v. State ex rel. Dept. of Motor Vehicles and Public Safety,* 121 Nev. 44, 75, 110 P.3d 30, 51 (Nev. 2005) (overruled on other grounds).

Here too, the court finds that plaintiff has demonstrated a likelihood of success on the merits. It appears that defendants collectively worked together to prepare, execute and recorded the quitclaim deeds and GBS deeds knowing that plaintiff did not authorize the deeds or conveyances of the subject properties. Plaintiff is a large-scale corporation that maintains records of its property interest and employees. Plaintiff also contends that defendant Willis falsely represented that he is an authorized agent of Fannie Mae. Because the defendants performed the same acts together on nine separate occasions, it is likely that defendants knew that plaintiff did not authorize the quitclaim deeds, and that defendant Willis is not and was not an authorized agent of Fannie Mae. Accordingly, the court finds that plaintiff has demonstrated a likelihood of success on the merits.

      B.  *Likelihood of irreparable injury*

Plaintiff argues that it will suffer irreparable injury if defendants continue to record fraudulent deeds concerning plaintiff's real property. Real property is unique, and the law holds that the loss of real property constitutes irreparable injury per se. *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 290 (1940); *see also Dixon v. Thatcher,* 742 P.2d 1029 (Nev. 1987) (holding an injunction appropriate to prevent foreclosure of real property). Further, where property subject to the litigation is likely to be dissipated unless the court freezes the asset, and there are allegations of past fraud, an injunction is appropriate. *See, e.g., Fidelity Nat. Title*

*Ins. Co. v. Castle,* 201 1 WL 5882878, *6 (N.D. Cal. 2011) (granting an injunction where defendants placed fraudulent liens on real property).

The court agrees with plaintiff. As defendants continue to prepare, execute, and record deeds that strip Fannie Mae of recorded title to the subject properties, plaintiff's interests are further damaged or potentially conveyed entirely to other parties that may assert they are bona fide purchasers.

Plaintiff has demonstrated a high likelihood that it will suffer continued injury at the hands of defendants. Defendants have continued to record fraudulent deeds even after the filing of the complaint. (Doc. #17, Exh. 24). The recording of this deed evidences an attempt to further cloud title and defraud plaintiff of its assets.

C. *Balance of hardships*

Plaintiff's claims of balance of the hardships weigh in its favor because it suffers a potential loss of property interest. (Doc. #17) If defendants proceed with their current efforts, additional properties could be affected and the title to the subject properties could be further clouded. Conversely, granting a temporary restraining order until the motion for preliminary injunction can be fully briefed and adjudicated will not create a hardship for defendants. Defendants need only temporarily refrain from executing and recording documents that reference Fannie Mae or properties in which the chain of title of the property reflects Fannie Mae as the owner of record of the property. If the court ultimately agrees with defendants' position at the preliminary injunction stage, the defendants will not be affected.

D. *Public interest*

Plaintiff contends that granting the injunction and preventing defendants from preparing and recording additional documents is in the public's interest. Defendants' conduct may lure additional tenants to sign leasehold agreements for properties they do not own, leaving tenants in a precarious position once the litigation resolves. Thus, it is in the public's best interest to enjoin Defendants' objectionable conduct rather than risk the addition of more properties and parties to the litigation.

**James C. Mahan**
**U.S. District Judge**

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's *ex parte* motion for a temporary restraining order (doc. # 17) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants and/or all persons acting concert or participation with them, or any of them, are prohibited from: attempting to execute additional quitclaim deeds and/or recording any kind of conveyance against the subject properties or any properties owned by plaintiff Fannie Mae.

IT IS FURTHER ORDERED that this temporary restraining order shall be effective upon the posting by plaintiff of a bond in the amount of $500.00.

IT IS FURTHER ORDERED that the parties are to appear for hearing and oral argument regarding plaintiff's **motion for a preliminary injunction on January 26, 2016, at 10:00 a.m. in courtroom 6B.**

IT IS FURTHER ORDERED that, to ensure defendants receive timely notice of the hearing, plaintiff may, in addition to the requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure, serve its motions, this order and all other pleadings filed to date on defendants by electronic mail.

IT IS FURTHER ORDERED that defendants shall file and serve opposition papers, if any, no later than January 19, 2016 by 4:00 p.m. Plaintiff shall file and serve its reply, if any, no later than January 22, 2016 by 4:00 p.m.

DATED January 13, 2016, at 11:15 a.m.

*/s/ James C. Mahan*
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**