UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

    Plaintiff(s),

    v.

ERNEST C. ALDRIDGE, et al.,

    Defendant(s).

Case No. 2:15-CV-2366 JCM (GWF)

ORDER

       Presently before the court is plaintiff Federal National Mortgage Association's ("plaintiff") ("Fannie Mae") motion for a preliminary injunction (doc. # 18); defendant Clarence Willis filed a response (doc. #24), and plaintiff filed a reply. (Doc. #27). The court held a hearing on Junary 26, 2016, and granted plaintiff's motion for preliminary injunction.

**I.   Background**

       Plaintiff owns the following nine real properties: 230 Flint Street, Fernley, Nevada 89408 (assessor's parcel No.: 020-323-06) ("Flint property"); 330 Garden Lane, Fernley Nevada 89408 (assessor's parcel No.: 020-729-15) ("Garden property"); 5373 Homeria Street, Las Vegas, Nevada 89113 (assessor's parcel No.: 163-28-720-01) ("Homeria property"); 7240 Mountain Moss Drive, Las Vegas, Nevada 89147 (assessor's parcel No.: 163-15-710-093) ("Mountain Moss property"); 7116 Cornflower Drive, Las Vegas, Nevada 89128(assessor's parcel No.: 138-27-515-029) ("Cornflower property"); 5320 Hombly Avenue, Las Vegas, Nevada 89146 (assessor's parcel No.: 163-01-511-026) ("Hombly property"); 2523 Palma Vista Avenue, Las Vegas, Nevada 89121 (assessor's parcel No.: 162-12-310-045) ("Palma Vista property"); 4912 Canadian Drive, Las Vegas, Nevada 89130 (assessor's parcel No.: 125-36-814-012) ("Canadian property"); and 5654

**James C. Mahan**
**U.S. District Judge**

Thunder Spirit Street, Las Vegas, Nevada 89148 (assessor's parcel No.: 163-30-816-006) ("Thunder Spirit property") (collectively, "subject properties"). (Doc. #17)

Plaintiff alleges that over the course of several months, the defendants have engaged in a conspiracy to defraud plaintiff of its interest in these nine Nevada properties. Defendants, without any legal right or authorization by plaintiff, prepared, executed and recorded deeds purporting to transfer title from plaintiff to the defendants.

It appears that the defendants executed all nine schemes using substantially similar patterns. Fannie Mae acquired its ownership interest in a subject property pursuant to a Trustee's Deed Upon Sale recorded in the official records for the appropriate county. Then, defendant Ernest C. Aldridge would record and subsequently re-record a quitclaim deed. For each property, plaintiff Fannie Mae would purportedly deed the property to defendant Aldridge for the amount of $10.00. Defendant Clarence Moses Willis would then sign the quitclaim deed as purported authorized agent for Fannie Mae. The quitclaim deeds would list plaintiff's mailing address as 4912 Canadian Drive, Las Vegas, Nevada 89130.

Plaintiff asserts that Clarence Moses Willis is not, nor as ever been, an employee of plaintiff Fannie Mae and is not an agent or authorized representative of plaintiff in any capacity. Furthermore, 4912 Canadian Drive, Las Vegas, Nevada 89130 is not plaintiff's mailing address. Plaintiff also claims that it never authorized defendant Aldridge to prepare, execute or record any quitclaim deed, nor did plaintiff authorize defendant Willis to prepare, execute or record any quitclaim deed on its behalf.

Four of the properties, as detailed fully in plaintiff's motion for TRO and preliminary injunction, have had a Grant, Bargain, Sale Deed recorded in the records of Clark or Lyons County. (Doc. #17). "Pastor Ernest C. Aldridge and his successor, a corporate sole," has purportedly deeded each of these properties to one of defendants Geri L. McKinnion, Creative Solutions 4 U, or Clarence Moses Willis for $10.00.

On January 13, 2016, this court granted plaintiff's *ex parte* motion for a TRO, set a briefing schedule for the parties to file responses for the preliminary injunction motion, and set a hearing date. (Doc. #19). Defendant Willis was the only defendant to respond. (Doc. #24). The other

**James C. Mahan**
**U.S. District Judge**

- 2 -

defendants have not responded to the motion for preliminary injunction nor did they appear in court for the preliminary injunction hearing.

In response to the motion for preliminary injunction, defendant Willis made no substantive arguments pertaining to the motion for preliminary injunction. (Doc. #24). He did, however, provide various documents including a certificate of business asserting that he was conducting business under the fictitious name of "Federal National Mortgage Association," and a purported copy of a Nevada State Business License issued to "Federal National Mortgage Association" under the address 4912 Canadian Drive, Las Vegas, NV 89130, Defendant Willis's personal address. (*Id.*)

Plaintiff's reply argues that the attached exhibits in defendant's response are clear proof that defendant sought out and obtained various purported licenses in order to falsely operate under its name, which is prohibited by the statute that governs plaintiff. 12 U.S.C. § 1723(a)(e). Plaintiff never authorized defendant to use its name.

**II.     Legal Standard**

It is well established that a plaintiff seeking a preliminary injunction or temporary restraining order must demonstrate each of the following: (1) a likelihood of success on the merits; (2) that he is likely to suffer irreparable harm in the absence of relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element.

Post-*Winter*, the Ninth Circuit has maintained its serious question and sliding scale test. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (quotations omitted).

**James C. Mahan**
**U.S. District Judge**

1  Additionally, pursuant to Local Rule 7-2, an opposing party must file points and authorities
2  in response to a motion and failure to file a timely response constitutes the party's consent to the
3  granting of the motion.  *See* LR IB 7-2(d); *United States v. Warren*, 601 F.2d 471, 474 (9th Cir.
4  1979).

**III.  Discussion**

*A.  Likelihood of success on the merits*

Plaintiff argues that it is likely to succeed on the merits of its claims for declaratory relief, quiet title, fraud, conspiracy to defraud, slander of title, unjust enrichment, fraudulent conveyance, unauthorized impersonation, and trespass. (Doc. #17). However, for the purposes of this order, the court will focus its likelihood of success on the merits analysis on only those claims central and immediately relevant to the injunction preventing the unauthorized use of plaintiff's name and conveyance against the real properties in question.  Because the court finds that plaintiff is likely to succeed on its claims for unauthorized impersonation, declaratory relief, quiet title, fraud, and conspiracy to defraud, the court need not address whether plaintiff is likely to succeed on the merits of its remaining claims.

*a.  Unauthorized Use of the Name Federal National Mortgage Association*

Defendant Willis' unauthorized use of the name Federal National Mortgage Association, and the use of the name in Aldridge Quitclaim Deeds, is a violation of federal law. 12 U.S.C. § 1723(a)(e) states that "[n]o individual, partnership, or corporation, except the bodies corporate named in section 1717(a)(2) of this title, shall hereafter use the words "Federal National Mortgage Association". . . or any combination of such words, as the name of part thereof under which the individual, association, partnership, or corporation shall do business." 12 U.S.C. § 1723(a)(e). An injunction is authorized for violating this statute. *Id.*

Plaintiff asserts it never authorized defendant to use its name, and there is no evidence to suggest the contrary. Indeed, the documents included in defendant's response make it clear that Willis intentionally sought out and obtained licenses in order to operate under the name Federal National Mortgage Association. (Doc. #25). Even if the licenses were properly issued, they would be void ab initio under the Supremacy Clause. *Val del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022

James C. Mahan
U.S. District Judge

- 4 -

(9th Cir. 2013). Plaintiff therefore has a high likelihood of success on the merits, and Defendant Willis is enjoined from use of or operation under the name "Federal National Mortgage Association."

        *b. Declaratory Relief*

Plaintiff argues that it is likely to succeed on its cause of action for declaratory relief because it has superior claim to the title of the subject properties. 12 U.S.C. § 1723(a)(e) states that "[n]o individual, partnership, or corporation, except the bodies corporate named in section 1717(a)(2) of this title, shall hereafter use the words "Federal National Mortgage Association". . . or any combination of such words, as the name of part thereof under which the individual, association, partnership, or corporation shall do business." 12 U.S.C. § 1723(a)(e). An injunction is authorized for violating this statute. *Id.*

Declaratory relief is available when: (1) a justiciable controversy exists; (2) the controversy is between parties with adverse interests; (3) the party seeking declaratory relief has a legally protectable interest; and (4) the issue involved in the controversy is ripe for judicial determination. *Doe v. Bryan,* 102 Nev. 523, 525, 728 P.2d 443, 444 (l986) (citing *Kress v. Corey,* 65 Nev. l, 26, 189 P.2d 352, 364 (1948)); *see also Douglas v. Don King Productions, Inc.,* 736 F.Supp 223, 225 (1990). Declaratory relief is also appropriate to clarify parties' rights to property where allegations of fraudulent conveyances exist. *See, e.g.*, *Federal Home Loan Mortg. Corp. v. Gonzalez,* 2015WL 2358444, *3 (E.D. Cal. 2015) (granting declaratory relief where defendants executed and recorded, without authority, grant deeds conveying away Freddie Mac's ownership interest in the subject property).

Based on the documents provided, it appears that plaintiff obtained legal title to all of the subject properties via legitimate trustee's deeds upon sale. (Doc. #17, Exhs. 1, 5, 8, 11, 13, 16, 18, 20, 22). Following the establishment of plaintiff's interests, defendant Aldridge, without authorization, prepared, executed and recorded unauthorized quitclaim deeds. These unauthorized deeds purported to convey title in the subject properties to Defendant Aldridge. In furtherance of this scheme, Defendant Willis, executed the quitclaim deeds purportedly on behalf of plaintiff,

1  stating he was an "authorized agent." Plaintiff responds that defendant Willis is not, and has never
2  been, an employee or authorized agent of Fannie Mae.
3      The court finds that plaintiff has demonstrated a likelihood of success on the merits. Given
4  their lack of authorization to prepare, execute or record quitclaim deeds against the properties,
5  defendants' actions appear to intentionally cloud title and allow them to profit by collecting rental
6  proceeds for properties belong to plaintiff. (Doc. #17). However, as these deeds are fraudulent and
7  unauthorized, they cannot convey title. *See Balfour v. Hopkins*, 93 F. 564, 569 (9th Cir. 1899);
8  *United States v. Payette Lumber & Mfg. Co.*, 198 F. 881, 895 (D. Idaho 1912).
9          c.  *Quiet Title*
10      Plaintiff next claims it is entitled to an order quieting title in Fannie Mae's names because
11  the quitclaim deeds and GBS Deeds are fraudulent and unauthorized. Pursuant to N.R.S. § 40.010,
12  a claim for quiet title "may be brought by any person against another who claims an estate
13  or interest in real property, adverse to the person bringing the action, for the purpose of
14  determining such adverse claim." *See also Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d
15  1 103, 1107 (2013) (finding that a quiet title claim is set forth in N.R.S. 40.010).
16      The court finds plaintiff is likely to succeed on the merits of this issue. In a quiet title action,
17  the burden of proof rests with the plaintiff to prove good title. *Brehant v. Preferred Equities Corp.*,
18  112 Nev. 663, 918 P.2d 314, 31 8 (1996). Plaintiff obtained legal title to the properties via several
19  trustee's deeds upon sale. (Doc. #17, Exhs. 1, 5, 8, 11, 13, 16, 18, 20, 22). Plaintiff claims to have
20  never agreed to convey the subject properties to the defendants.
21          d.  *Fraud and Conspiracy to Defraud*
22      Plaintiff claims that defendants knowingly prepared, executed and recorded fraudulent
23  deeds. In Nevada, a cause of action for fraud requires a showing of false representation of a
24  material fact, known to be false, with the intent to induce reliance. *Lubbe v. Barba.* 91 Nev. 596,
25  599, 540 P.2d 115, 117 (1975).
26      A civil cause of action for conspiracy to defraud requires: 1) a conspiracy agreement. *i.e.,* a
27  combination of two or more persons who, by some concerted action intended to accomplish an
28  unlawful objective for the purpose of harming another; 2) an overt act of fraud in furtherance

**James C. Mahan**
**U.S. District Judge**

- 6 -

of the conspiracy; and 3) resulting damages to the plaintiff. *Jordan v. State ex rel. Dept. of Motor Vehicles and Public Safety,* 121 Nev. 44, 75, 110 P.3d 30, 51 (Nev. 2005) (overruled on other grounds).

Here too, the court finds that plaintiff has demonstrated a likelihood of success on the merits. It appears that defendants collectively worked together to prepare, execute and recorded the quitclaim deeds and GBS deeds knowing that plaintiff did not authorize the deeds or conveyances of the subject properties. Plaintiff is a large-scale corporation that maintains records of its property interest and employees. Plaintiff also contends that defendant Willis falsely represented that he is an authorized agent of Fannie Mae. Because the defendants performed the same acts together on nine separate occasions, it is likely that defendants knew that plaintiff did not authorize the quitclaim deeds, and that defendant Willis is not and was not an authorized agent of Fannie Mae. Accordingly, the court finds that plaintiff has demonstrated a likelihood of success on the merits.

    *B. Likelihood of irreparable injury*

Plaintiff argues that it will suffer irreparable injury if defendants continue to record fraudulent deeds concerning plaintiff's real property. Real property is unique, and the law holds that the loss of real property constitutes irreparable injury per se. *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 290 (1940); *see also Dixon v. Thatcher,* 742 P.2d 1029 (Nev. 1987) (holding an injunction appropriate to prevent foreclosure of real property). Further, where property subject to the litigation is likely to be dissipated unless the court freezes the asset, and there are allegations of past fraud, an injunction is appropriate. *See, e.g., Fidelity Nat. Title Ins. Co. v. Castle,* 201 1 WL 5882878, *6 (N.D. Cal. 2011) (granting an injunction where defendants placed fraudulent liens on real property).

The court agrees with plaintiff. As defendants continue to prepare, execute, and record deeds that purport to strip Fannie Mae of recorded title to the subject properties, plaintiff's interests are further damaged or potentially conveyed entirely to other parties that may assert they are bona fide purchasers.

Plaintiff has demonstrated a high likelihood that it will suffer continued injury at the hands of defendants. Defendants have continued to record fraudulent deeds even after the

**James C. Mahan**
**U.S. District Judge**

- 7 -

filing of the complaint. (Doc. #17, Exh. 24). The recording of this deed evidences an attempt to further cloud title and defraud plaintiff of its assets.

### C. Balance of hardships

Plaintiff's claims of balance of the hardships weigh in its favor because it suffers a potential loss of property interest. (Doc. #17) If defendants proceed with their current efforts, additional properties could be affected and the title to the subject properties could be further clouded. Conversely, granting a temporary restraining order until the motion for preliminary injunction can be fully briefed and adjudicated will not create a hardship for defendants. Defendants need only temporarily refrain from executing and recording documents that reference Fannie Mae or properties in which the chain of title of the property reflects Fannie Mae as the owner of record of the property. If the court ultimately agrees with defendants' position at the preliminary injunction stage, the defendants will not be affected.

### D. Public interest

Plaintiff contends that granting the injunction and preventing defendants from preparing and recording additional documents is in the public's interest. Defendants' conduct may lure additional tenants to sign leasehold agreements for properties they do not own, leaving tenants in a precarious position once the litigation resolves. Thus, it is in the public's best interest to enjoin Defendants' objectionable conduct rather than risk the addition of more properties and parties to the litigation.

## IV. Conclusion

Based on the foregoing, the balance of factors weigh in plaintiff's favor and the court finds good cause to order a preliminary injunction against the defendants.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion for preliminary injunction (doc. # 18) be, and the same hereby is, GRANTED.

DATED January 26, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**